IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EDWIN N. LINDSEY, JR.,<br><br>Defendant. | CR. NO. 19-00019 JAO<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

On August 10, 2020, Defendant Edwin N. Lindsey, Jr. ("Lindsey") filed a Motion to Suppress Evidence ("the Motion"), ECF No. 111, seeking suppression of evidence obtained by the Honolulu Police Department ("HPD") following a traffic stop. After considering the parties' briefs and the testimony and exhibits at an evidentiary hearing, and incorporating its January 7, 2021 oral findings and conclusions rendered at the end of the hearing,[1] the Court DENIES the Motion for the following reasons.

---

[1] In the event anything in this Order contradicts the Court's oral findings and conclusions, this Order controls.

# I. FINDINGS OF FACT

At the evidentiary hearing held on January 7, 2021, the Court took testimony from one witness, HPD Officer Jarrett Atkins. Having had the opportunity to evaluate Officer Atkins' earnest demeanor and listen to his responses to direct and cross examination, the Court finds him credible.

Based on Officer Atkins' testimony and the exhibits, the Court finds as follows:

1. Officer Atkins has seven years of experience working for HPD, and has conducted hundreds of traffic stops. He also has extensive involvement in drug arrests, having made 33 felony drug arrests in 2019 alone.

2. During the morning of February 6, 2019, Officer Atkins was driving a marked HPD patrol car, with Officer Jeffrey Fleigner in the passenger seat. The two were on duty and had been informed to be on the lookout for various individuals with outstanding arrest warrants.

3. At approximately 8:05 a.m., Officer Atkins was approaching Kalanianaole Highway from Keolu Drive. As he rolled to a stop at the intersection of the two roads, he watched a Mazda drive past him on Keolu Drive, turning right from Kalanianaole Highway. He noticed that the driver of the Mazda looked like one of the individuals whom the police were hoping to find. He then turned around and looked over his

left shoulder and noticed that the safety check sticker on the Mazda was missing, which was a violation of Hawaiʻi law.

4. He was also able to see the car's license plate. He then told Officer Fleigner to run the license plate in HPD's mobile computer database. Exhibit 12 indicates that Officer Fleigner did so at 8:05:52 a.m. Officer Fleigner told Officer Atkins that the car's vehicle tax and safety check had expired, the former of which was also a violation of Hawaiʻi law.

5. In the meantime, Officer Atkins turned his vehicle around to follow the Mazda and was able to reconfirm its license plate. He then stopped the Mazda on Keolu Drive, using his emergency lights and siren. The Mazda pulled over in the bike lane.

6. Lindsey was driving the Mazda alone. He opened his door, but remained in his car. When he looked toward the officers while they were still behind his vehicle, he appeared panicked. He then closed his door and remained in the car as the officers approached.

7. Officer Atkins walked up to the driver's window, which was opened, introduced himself, told Lindsey that he had stopped him for an expired vehicle tax and safety check, and asked Lindsey for his license and registration. In the meantime, Officer Fleigner stood at the front passenger's window, which was also opened.

8. Lindsey told Officer Atkins, "I don't have a license." When asked whether he did not have his license with him or did not have a license at all, Lindsey again said, "I don't have a license." Lindsey also admitted that he did not have any vehicle paperwork, but provided his name to the officer. Officer Atkins then told Officer Fleigner that Lindsey might have a suspended license, and so Officer Fleigner ran Lindsey's name through the mobile computer. Exhibit 12 indicates that Officer Fleigner did so at 8:07:58 a.m. Officer Fleigner confirmed that Lindsey's license was suspended and told Officer Atkins as much.

9. Officer Atkins then told Lindsey to step out of the vehicle and that he was under arrest for driving with a suspended license. He handcuffed Lindsey behind his back, patted down Lindsey's waist area, and felt a hard, cylindrical object with a bulbous end in Lindsey's front left jacket pocket. Based on his training and experience, Officer Atkins believed that the object was a glass drug pipe, and knew that it could be dangerous, particularly if it broke, in which case it could cut Lindsey or him. Officer Atkins reached into the pocket and removed what indeed turned out to be a glass smoking pipe, with residue in it that was consistent with smoked methamphetamine. Officer Atkins then informed

Lindsey that he was also under arrest for Promoting a Dangerous Drug in the Third Degree.

10. After Officer Atkins placed Lindsey in the patrol car, Officer Fleigner directed him to look at the front passenger seat area of the Mazda. Officer Atkins did so, and, through the Mazda's windshield, saw an unzipped black nylon bag with a large amount of folded United States currency in it. Officer Atkins testified that he would have noticed if Officer Fleigner had earlier entered the Mazda and that Officer Fleigner had not done so. Exhibit 10, which depicts the distance between the patrol car and the Mazda, corroborates Officer Atkins' testimony on this topic.[2]

11. Any discrepancy in the exhibits regarding the location of the currency at the time of the Officer Atkins' observation of it is easily explained by the exhibits themselves. For example, Exhibits 2 and 4[3] show the currency in the unzipped bag while the currency cannot be seen in Exhibit 5. Exhibits 2 and 4 were taken at different angles from Exhibit 5, which is evident when considering the positions of the bottles shown in the

---

[2] At the hearing, the Court did not enter oral findings regarding the recovery of the currency but upon reconsideration determines that it should do so here.

[3] Exhibit 7 also shows the currency in the unzipped bag, and appears to be a close-up of the shot taken in Exhibit 4.

exhibits, whether the glove compartment is visible, and the fact that Exhibit 4 was taken through the windshield while Exhibit 5 was taken through the open passenger window.

12. After taking Lindsey to Castle Medical Center to ensure that he was healthy enough to book into jail, Officer Atkins transported Lindsey to the Kailua Police Station, where he conducted a pre-booking search and uncovered a cellophane bindle of suspected black tar heroin in Lindsey's front right shorts pocket.

13. Exhibit A is a written complaint Lindsey filed on May 14, 2019 with the HPD Professional Standards Office.  Lindsey signed the complaint before a notary public.  The Court finds that the complaint is self-serving and not credible.  The Court does not consider Lindsey's decision not to testify at the hearing in its analysis.

## II.   CONCLUSIONS OF LAW

**A.   There Was Reasonable Suspicion for the Stop.**

After the testimony of Officer Atkins, Lindsey conceded that there was reasonable suspicion for the traffic stop.

**B.   There Was Probable Cause for the Arrest.**

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has

been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citations omitted). If there was not, then the fruits of that arrest are inadmissible under the Fourth Amendment. *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).

The probable cause inquiry is not "reduc[ible] to a neat set of legal rules" and requires the Court to "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks and citations omitted). Such examination must take into account the totality of the circumstances, and the determination of probable cause "turn[s] on the assessment of probabilities in particular factual contexts." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (internal quotation marks and citation omitted).

The parties do not dispute that driving with a suspended license is an arrestable offense. *See* Hawaiʻi Revised Statutes § 286-132. The officers arrested Lindsey only after they confirmed via their mobile computer that his license was indeed suspended, and surely that confirmation suffices for probable cause. The fruits of that arrest, then, are admissible at trial.

### C. The Currency Was Discovered in Plain View.

The plain view doctrine is an exception to the Fourth Amendment's mandate that police obtain a warrant before seizing evidence. It requires that: (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) the item must be in plain view; and (3) the incriminating nature of the item seized must be "immediately apparent." *Horton v. California*, 496 U.S. 128, 136 (1990) (internal quotation marks and citations omitted). Defendant does not contest the first and third elements here; he challenges only that the cash was not in plain view.

The Court concludes that the cash was indeed discovered in plain view. The officers did not engage in a search in order to discover the cash, *cf. Arizona v. Hicks*, 480 U.S. 321, 324 (1987) (holding that the moving of items to reveal serial numbers constituted a search), but rather saw the cash through the windshield of the Mazda, without the aid of any devices that would assist them in seeing it. *See United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001) (affirming denial of motion to suppress evidence where item was seen in plain view through the windshield of a car). Therefore, the evidence of the currency is admissible at trial.

//

//

//

For the foregoing reasons, the Motion is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, January 19, 2021.



Jill A. Otake
United States District Judge

Cr. No. 19-00019 JAO, *United States of America v. Edwin N. Lindsey, Jr.*;
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE